**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER HALGAS,<br><br>            Petitioner,<br><br>    v.<br><br>MATTHEW LEITH,<br><br>            Respondent. | Civil Action<br>No. 23-22125 (CPO)<br><br>**OPINION** |

**O'HEARN, District Judge.**

Petitioner is a state pretrial detainee currently detained at the Burlington County Jail. He is proceeding with a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) For the reasons stated in this Opinion, the Court will decline to exercise pretrial habeas jurisdiction, dismiss the Petition without prejudice, and will not issue a certificate of appealability.

### I.    BACKGROUND

This case arises from Petitioner's pretrial detention stemming from his state criminal case. (ECF No. 8, at 2.) The State alleges that on September 3, 2023, at around 8:36 a.m., police officers were dispatched to Petitioner's home, regarding reports of a shooting in the area. (ECF No. 8-17, at 1.) The initial caller, a neighbor, indicated that he had heard a man, later identified as Petitioner, screaming and yelling, just before he heard gunshots, and then observed Petitioner speed off on a Harley Davidson motorcycle. (*Id.*) Officers found spent shell casings in the driveway and inside the open garage. (*Id.*) Officers interviewed Petitioner's wife, R.H., and two daughters, G.H. and C.H. (*Id.* at 2–4.) R.H., G.H., and C.H., did not corroborate the allegations above, but R.H. did advise that Petitioner owned a Harley. (*Id.* at 2–4.) Pursuant to a search warrant, numerous threatening messages from Petitioner to his wife were revealed including, but not limited to:

1. I will shoot you if you head this way.
2. [C]ome home you will die.
3. I possess the house you're not here you come back I will shoot on you [] bring the cops I will shoot on them.
4. I'm gonna start shooting my guns like f**king crazy you don't even f**king know you're gonna be getting calls like . . . there [is] and actual war going on your property.
5. Want to let you know that I am a terrorist . . . however very confirmed and absolutely sure . . . the county prosecutor absolutely knows that I'm a f**king terrorist.
6. I'll shoot anybody coming down the driveway.
7. I'll be shooting on you by the time you get to the creek if you survive the 50 and the other long guns, I'll hit you in the face with a shotgun or handgun, but I want to stab you in the throat before I shoot you.
8. I'm still not in the safe your life is in danger. Do not come down the driveway.
9. I'm hyperventilating I've shot I don't know how many bullets to the house.
10. Can you bring the cops with you? I have enough guns and ammo to take the whole Moorestown Police Department. I bet I could take half of sweat outfit before anybody even get in the house or anything I have explosive here just so you know I'll be setting them up.
11. I'm sure I don't care if you have my daughter in the car I will shoot on that motherfucking car. Everything in that car is gonna look like Swiss cheese.

(ECF No. 8-17, at 11–14.) Petitioner sent these messages on July 27, 2023, a few weeks prior to the alleged shooting. (*Id*.) The police also interviewed other family members who gave accounts of the troubling history of violence between Petitioner and R.H., which included threats to kill R.H. and their children, pointing guns at R.H., and Petitioner shooting at cars passing by the road. (*Id*. at 5–8.)

In particular, the police interviewed B.A., Petitioner's niece, who disclosed messages she received from C.H., Petitioner's daughter, on September 3, 2023, which stated:

        8:35 a.m.

            C.H.:   Not dad pointing a gun at mom
                     Not him running [] out side
                     Not him shooting at the cars that drive pas[t]

        8:43 a.m.

            C.H.:   Mom's confronting him [about] being normal yesterday to an as**ole the next[]
                     Probably not gonna end well

        10:08 a.m.

            B.A.:   Oh
                     What happened?

(*Id*. at 6–7.)

      Ultimately, through two separate criminal complaints, Petitioner was charged with terroristic threats, endangering the welfare of children, and various weapons offenses, (ECF No. 8-4; ECF No. 8-6), and he was later indicted on those charges, (ECF No. 8-8). As to the first criminal complaint, a state court judge ordered Petitioner's pretrial detention on September 15, 2023. (ECF No. 8-5.) As to the second complaint, a different state court judge ordered Petitioner's pretrial detention on October 4, 2023. (ECF No. 8-7.) Both judges found that "no amount of monetary bail, non-monetary conditions or combination of monetary bail and conditions would reasonably assure the protection of the safety of any other person or the community, [and] that the defendant will not obstruct or attempt to obstruct the criminal justice process." (ECF No. 8-5, at 1–2; ECF No. 8-7, at 1–2.)

      On September 18, 2023, Petitioner filed an appeal of his first pretrial detention order, (ECF No. 8-18; ECF No. 8-13), and the New Jersey Superior Court, Appellate Division, affirmed the detention order, (ECF No. 8-19). On October 30, 2023, Petitioner filed a motion for leave to appeal to the New Jersey Supreme Court, (ECF No. 8-20; ECF No. 8-14), which was denied, (ECF No. 8-9).

On October 5, 2023, Petitioner filed an appeal of his second pretrial detention order, (ECF No. 8-10), and the Appellate Division affirmed, (ECF No. 8-11). Petitioner then filed a motion for leave to appeal to the New Jersey Supreme Court on November 27, 2023, (ECF No. 8-12), which remains pending. (ECF No. 9, at 8.)

In terms of relief in this Court, Petitioner requests that the Court order his immediate release, and order the trial court to conduct a new bail hearing. (ECF No. 1, at 8.) Petitioner filed the instant Petition on November 8, 2023, (*id*. at 9), Respondent filed an Answer opposing relief, (ECF No. 8), and Petitioner filed a Reply, (ECF No. 9).

## II.   DISCUSSION

Petitioner, a pretrial detainee, contends that he is entitled to habeas relief based on excessive bail, due process, and retaliation claims. (ECF No. 1, at 6–8.) Generally, however, for state inmates, federal habeas corpus is substantially a post-conviction remedy. *Moore v. DeYoung*, 515 F.2d 437, 441–42 (3d Cir. 1975).

### A.  Jurisdiction

Although federal courts have "jurisdiction under 28 U.S.C. § 2241 to issue a writ of habeas corpus before a criminal judgment is entered against an individual in state court," *see id.*, courts must exercise that jurisdiction "sparingly" in order to prevent federal pretrial interference of "the normal functioning of state criminal processes.'" *Duran v. Thomas*, 393 F. App'x 3, 4 (3d Cir. 2010) (quoting *Moore*, 515 F.3d at 445–46).

As a result, if the petitioner *has* exhausted his state remedies, a district court should only exercise pretrial habeas jurisdiction if the petitioner "makes a special showing of the need for such adjudication." *Moore*, 515 F.2d at 443; *see also e.g.*, *Hill v. New Jersey*, No. 23-687, 2024 WL 230117, at *1 (D.N.J. Jan. 22, 2024). If the petitioner *has not* exhausted his state remedies, a

4

district court should only exercise pretrial habeas jurisdiction if "extraordinary circumstances are present." *Moore*, 515 F.2d at 443; *see also Duran*, 393 F. App'x at 4. To use the "extraordinary circumstances" exception, a petitioner must suggest that the state forum is unable "to afford an adequate remedy at law." *Moore*, 515 F.2d at 448. Such circumstances may exist "when there is a showing of 'delay, harassment, bad faith or other intentional activity' on the part of the state." *Reese v. Warden Philadelphia FDC*, 904 F.3d 244, 246 n.2 (3d Cir. 2018).

To exhaust a claim, a petitioner must have "fairly presented" its "factual and legal substance to the state courts in a manner that put the state courts on notice that a federal claim was being asserted." *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 228 (3d Cir. 2017); *see Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007); *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004) ("The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review.").

Although it is the most straightforward method, a petitioner need not cite to the "book and verse of the federal constitution." *Harmon v. Lamar*, 640 F. App'x 175, 179 (3d Cir. 2016); *Briston v. Wholey*, 307 F. App'x 616, 618 (3d Cir. 2009); *cf. Wilkerson*, 871 F.3d at 227–29. A petitioner may also "fairly present" his federal claim through either: (a) reliance on relevant federal cases employing a constitutional analysis, (b) reliance on state cases employing a federal constitutional analysis, "(c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *See Wilkerson*, 871 F.3d at 229 (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). The Supreme Court has cautioned, however, that "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts .

5

. . or that a somewhat similar state-law claim was made." *Anderson v. Harless* 459 U.S. 4, 6 (1982) (citations omitted).

With those principles in mind, under Ground One, Petitioner argues that his pretrial detention violates his Eighth Amendment right to be free from excessive bail. (ECF No. 1, at 6–7.) However, Petitioner, who was represented by counsel in his state court proceedings, did not even reference the Eighth Amendment in any of his state court filings that challenged his first pretrial detention order.[1] (*See* ECF No. 8-13; ECF No. 8-14.) Nor did Petitioner cite or rely upon federal cases or state cases employing a federal constitutional analysis. (*See* ECF No. 8-13; ECF No. 8-14.) Finally, Petitioner's state court filings do not call to mind the Eighth Amendment or allege a fact pattern within the mainstream of Eighth Amendment litigation. Petitioner did not, for example, argue that the State violated any right to bail, or use traditional phrases by asserting that his detention was "'excessive' in light of the perceived evil." *United States v. Salerno*, 481 U.S. 739, 754 (1987); *see Holland v. Rosen*, 895 F.3d 272, 291 (3d Cir. 2018); *Comeger v. Harry*, No. 21-2957, 2022 WL 20152349, at *6 (E.D. Pa. Apr. 19, 2022). For those reasons, the Court finds that Petitioner did not "fairly present" Ground One to any level of the state courts, let alone each level, and thus Ground One is unexhausted.

The Court arrives at the same conclusion as to Petitioner's remaining claims. Under Grounds Two and Three, Petitioner contends that his pretrial detention constitutes punishment and a violation of the presumption of innocence, in violation of the Due Process Clause of the Fifth

---

[1] The parties have only submitted Petitioner's state appellate briefs challenging his first pretrial detention order. (ECF No. 8-13; ECF No. 8-14.) Petitioner, however, acknowledges that he has not exhausted his challenges to his second pretrial detention order. (ECF No. 9, at 8 ("[T]o date, [Petitioner] has yet to receive any response from the New Jersey Supreme Court concerning his Motion.")). As a result, the Court need only determine whether Petitioner potentially exhausted his claims through his first set of state court filings.

Amendment.² (ECF No. 1, at 7.)  Finally, in Ground Four, Petitioner argues that his detention constitutes "retaliation" in violation of his First Amendment right to petition for redress of grievances. (*Id*. at 8.)

Again, none of Petitioner's state filings reference or mention the First or Fifth Amendments, nor did he cite or rely on any cases that addressed constitutional issues. (*See* ECF No. 8-13; ECF No. 8-14.)  In his brief to the New Jersey Supreme Court, Petitioner did accuse the trial court of utilizing detention "as a sort of 'pre-conviction' judgement based on its belief that [Petitioner] likely committed the offense . . . and [of] disregarding his right to be presumed innocent." (ECF No. 8-14, at 7–8.)  This statement, however, was in the limited context of disputing the state court's factual findings on pretrial detention, rather than asserting an independent constitutional claim. (*Id*.)  In any event, Petitioner did not include that assertion in his subsequent filings with the Appellate Division. (ECF No. 8-13.)

---

² The Due Process Clause of the Fifth Amendment only applies to the actions of *federal* actors, it does not apply to the state actors in this case. *E.g.*, *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) ("Bergdoll's Fifth Amendment claim fails because the Due Process Clause of the Fifth Amendment only applies to federal officials, and [defendant] is a state official."); *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) ("[T]he due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials."); *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983) ("The limitations of the fifth amendment restrict only federal governmental action."); *see also Donahue v. City of Hazleton, PA*, No. 22-3029, 2023 WL 7271079, at *2 (3d Cir. Nov. 3, 2023) ("Donahue could not proceed under the Fifth Amendment because he did not allege that any federal actor was involved.").

Accordingly, even if the Court exercised pretrial habeas jurisdiction, Petitioner's Fifth Amendment claims under Grounds Two and Three would lack merit.  Petitioner may have intended to file due process claims under the Fourteenth Amendment, which does apply to state actors, but Petitioner is not *pro se* and the Court is not required to liberally construe counseled pleadings. *See, e.g.*, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Zurawski v. Se. Pennsylvania Transp. Auth.*, 441 F. App'x 133, 135 (3d Cir. 2011).  If such claims were intended to be asserted, then they should have been specifically pled.

7

For all these reasons, the Court cannot find that Petitioner raised the "factual and legal substance" of these constitutional claims, under any fair reading of his filings, "in a manner that put the state courts on notice that a federal claim was being asserted." *Wilkerson*, 871 F.3d at 228; (*see* ECF No. 8-13; ECF No. 8-14).  As a result, Petitioner has not fairly presented Grounds Two, Three, and Four to the state courts, and these claims are unexhausted.

In his Reply, Petitioner asserts in conclusory fashion, without any analysis, that the "Eighth Amendment and Substantive Due Process implications in this factual scenario are facially apparent." (ECF No. 9, at 12.)  The Court disagrees.  Petitioner makes no effort to analogize his state court filings to corresponding constitutional cases.  Rather, if there is any implication of Petitioner's constitutional rights in his state court filings, Petitioner has failed to so demonstrate to this Court.

Since Petitioner has not exhausted any of his claims, this Court should only exercise pretrial habeas jurisdiction if "extraordinary circumstances are present." *Moore*, 515 F.2d at 443; *see also*; *Duran*, 393 F. App'x at 4.  Once again, to use the "extraordinary circumstances" exception, a petitioner must suggest "an inability of the state forum to afford an adequate remedy," and a showing of "delay, harassment, bad faith or other intentional activity" on the part of the state. *Moore*, 515 F.2d at 447 n.12, 448; *Reese*, 904 F.3d at 246 n.2.

The Court finds that Petitioner has not presented extraordinary circumstances.  First, Petitioner does not allege that the state court judge acted in bad faith when he issued the first order for pretrial detention. (ECF No. 1, at 6–8; ECF No. 9, 15–23.)  Nor has Petitioner attempted to demonstrate that the state courts cannot provide him with an "adequate remedy." *See Moore*, 515 F.2d at 448.  Indeed, such a showing may be impossible where, as here, Petitioner has not yet even attempted to fairly raise his constitutional claims with those courts.

8

Petitioner does allege that the prosecutor is aggressively pursuing the case in retaliation for Petitioner's filing of a civil rights case, but Petitioner's challenges to his pretrial detention orders themselves, are ordinary constitutional claims. (ECF No. 1, at 6–8.)  Indeed, in his state court filings, Petitioner's claims were ordinary state law challenges to his pretrial detention assessment. (ECF No. 8-13, at 6–10; ECF No. 8-14, at 7–9.)  "[R]un-of-the-mill challenges to [the] denial of pretrial release—are not 'exceptional' under any plausible definition of that term." *See, e.g.*, *Reese*, 904 F.3d at 246 n.2; *Chambers v. Bogan*, No. 19-4131, 2020 WL 247511, at *3 (E.D. Pa. Jan. 16, 2020).  For those reasons, the Court finds that Petitioner has failed to establish that this case presents extraordinary circumstances that merit pretrial habeas jurisdiction.  Accordingly, the Court will decline to exercise jurisdiction and dismiss the Petition.

### B. Procedural Default

Next, Petitioner contends that if he failed to exhaust, his claims are now procedurally defaulted, and the Court should consider his claims.  "The procedural default doctrine is an important corollary to the exhaustion requirement, which requires state prisoners to exhaust available state remedies before presenting a claim to a federal habeas court." *See, e.g.*, *Fowlkes v. Att'y Gen. of New Jersey*, No. 21-7734, 2021 WL 4129489, at *2 (D.N.J. Sept. 10, 2021) (citing *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).  Among other scenarios, the procedural default doctrine bars federal habeas claims when a prisoner fails to exhaust and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  Procedural default is an affirmative defense and the "state ordinarily is required to assert a procedural default in its answer if it intends to rely on that defense." *Szuchon v. Lehman*, 273 F.3d 299, 321 (3d Cir. 2001).

This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66; *McCandless*, 172 F.3d at 260.  Federal courts may not consider the merits *and grant* a procedurally defaulted claim unless: (1) the petitioner establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of federal law; or (2) the petitioner demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." *Leyva*, 504 F.3d at 366; *see also Coleman*, 501 U.S. at 750.

In this case, Petitioner argues that the state appellate courts "severely curtailed [his] ability to properly raise and argue . . . issues . . . by imposing arbitrary page limits." (ECF No. 9, at 13.) As Petitioner failed to "mention [his] constitutional rights by name," in his state court filings, he appears to believe that he is now forever barred from raising his constitutional claims. (*Id*. at 13–14.)

As a preliminary matter, this Court is not persuaded that the state courts would absolutely refuse to consider Petitioner's constitutional claims.  As a court may, at times, relax court rules in a variety of situations, including in the interests of justice.  Further, the Third Circuit has cautioned against presuming how the state courts would rule on a procedural default. *Mathis v. Att'y Gen. of New Jersey*, 732 F. App'x 138, 142 (3d Cir. 2018) (quoting *Toulson v. Beyer*, 987 F.2d 984, 989 (3d Cir. 1993)) ("'[W]e will not presume how the state courts would rule on' procedural default and, rather than dismissing with prejudice on that ground, will merely 'dismiss[ ] . . . without prejudice for failure to exhaust state remedies.'").

In the absence of additional rulings from the state courts, this Court is unable to definitively conclude that Petitioner's claims are procedurally barred.  Additionally, Respondent has not raised procedural default as an affirmative defense. (ECF No. 8, at 13–17 (alleging that "petitioner did

not raise any claims regarding his First, Fifth, and Eighth Amendment rights in the New Jersey courts and there is no evidence that doing so would have been futile")).  Accordingly, the Court finds that it is premature to decide issues related to procedural default at this time.

### C. Certificate of Appealability

Although federal prisoners do not require a certificate of appealability to appeal decisions in § 2241 cases, *Day v. Nash*, 191 F. App'x 137, 139 (3d Cir. 2006), state pre-trial detainees must obtain a certificate of appealability to challenge "the final order in a habeas corpus proceeding in which the detention complained of arises out of a process issued by a State court." 28 U.S.C. § 2253(c)(1)(A); *Stepney v. Anderson*, No. 20-2476, 2020 WL 2079241, at *2 (D.N.J. Apr. 29, 2020).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Based on the discussion above, jurists of reason would not find it debatable that the Court should not exercise pretrial habeas jurisdiction.  Consequently, the Court will not issue a certificate of appealability.

11

### III.    CONCLUSION

For the reasons above, the Court will decline to exercise pretrial habeas jurisdiction, dismiss the Petition without prejudice for lack of jurisdiction, and will not issue a certificate of appealability.  An appropriate Order follows.


DATED:  February 23, 2024

                                            /s/ Christine P. O'Hearn
                                            **Christine P. O'Hearn**
                                            **United States District Judge**